Cunningham, J.
The facts in this case, so far as we deem it necessary to state them, are about as follows: Amy Kessee died in Bent county, in 1905, leaving her surviving Daniel Kessee, husband, and six adult children by a former marriage, as her sole heirs. Daniel Kessee was appointed administrator of his wife’s estate, but died before the final settlement thereof. Thereupon, John W. Prowers, son of Amy, was appointed administrator de bonis non of the estate of the said Amy, and O. Gr. Hess was appointed executor of the will of Daniel Kessee.
Mary E. Eandolph, sister, was made sole beneficiary under the will of the said Daniel Kessee. After assuming the duties of administrator of his *543 mother’s estate, Prowers, as administrator, filed a claim in the probate court, in favor of his mother’s estate, against the estate of Daniel Kessee, said claim being for upwards of $46,000. Before a hearing was had upon said claim, a settlement or compromise was reached between Hess and Prowers, as executor and administrator of the respective estates. The conditions of the proposed compromise as submitted by them to the probate court; was as follows: ("We quote from the petition filed in the probate court by Prowers, wherein he asks for authority to make the compromise.) “That the said claim, so filed, can be paid and compromised between the two representatives of said estates for the sum of $9,400, which said sum, if said compromise be made, will be paid by the said O. Gr. -Hess, in his representative capacity as executor, to the said John ~W. Prowers, in his representative capacity as administrator, in full settlement, accord and satisfaction of said claim so filed against the estate of said Daniel Kessee.” The italics are our own. Petitions were filed by the executor and by the administrator, and appropriate orders entered thereon by the probate court, whereby the executor and administrator of the respective estates were authorized and empowered to consummate the tentative compromise agreement, which was accordingly done, Hess, as executor of the estate of Daniel Kessee, paying to Prowers, as administrator of the estate of Amy Kessee, the $9,400. Immediately upon receiving the $9,400, Prowers seems to have distributed same among the children of Amy Kessee, of which he was one, reserving, however, $600 therefrom to meet, as he says, one-half of the expense of admin *544 istering the estate of Anay Kessee. This distribution appears to have been made by authority, or order permitting the same, of the probate judge.
Appellant, Randolph, as sole legatee and devisee under the will of Daniel Kessee, who survived his wife, Amy, became and was entitled to one-lialf of the Amy Kessee estate. She, in addition to consenting to the payment of $9,400 from the Daniel Kessee to the Amy Kessee estate, in settlement of the $46,000 claim, relinquished all right that she might have had as distributee in and to that sum, after same had been paid Prow.ers, as aforesaid. Amy Kessee possessed, at the time of her death, certain real estate, but aside from the claim against the Daniel Kessee estate, she died possessed of but little cash or personal property — not sufficient to meet the expenses of administering her estate.
Immediately upon completing the compromise heretofore referred to, Hess and Prowers simultaneously gave notice, in due form, of their purpose to make final settlement; from which it is reasonable to suppose that Prowers had no thought, at that time, of resorting to the real estate of which his decedent died possessed, for the purpose of realizing money to meet the expenses incident to the closing up of the estate of which he was administrator. Hess carried his purpose into effect, and was discharged, but Prowers, upon presenting his final report, which showed debts and expenses in excess of cash then on hand, asked for, and over appellant’s objection, was granted a continuance or further time to make settlement. At or about the same time he presented his petition to the probate court, in the customary form in the main, for leave *545 to sell real estate. Appellant, Randolph, being entitled to one-half of this realty (unless it should be subjected to the debts of the estate) and by law being, upon the death of Daniel Kessee, vested with the title thereto, unsuccessfully resisted, in the probate court, Prowers’ petition to sell the real estate. She based her objection upon the contention that the petition on its face (which set out all the matters pertaining to the aforesaid compromise) showed that ample cash had come into the hands of the ad-, ministrator to meet all debts, including the expense of administration. She took an appeal to the district court, and again judgment went in favor of petitioner, authorizing him to sell so much of the real estate as was necessary to meet the liabilities, (mostly costs of administration) of the estate re-' maining unpaid. These are the substantial facts. Other minor contentions and unimportant facts have been purposely omitted.
The controlling question for our determination is: had the probate or district court jurisdiction to order the sale? It is elementary that so long as there is cash or personal property sufficient to meet the liabilities of the estate, resort may not be had to the realty.- It is equally well understood that the right to sell real estate, under the circumstances now under consideration, is statutory, and in order to confer power or jurisdiction on the probate court to grant it, the petition must set forth the facts which make it necessary to resort thereto. On these two propositions it is unnecessary to cite statutes or authorities.
Counsel for appellee seem to contend that the $9,400 was, in effect at least, paid over to Prowers,^ *546 not in Ms representative capacity, but directly to the heirs of the said Amy. The record is clearly against this contention. Not only do the petitions and decrees pertaining to the compromise negative this contention, but Prowers, as administrator of the estate of Amy Kessee, presented to and had allowed by the probate court his final report, wherein is contained an item of $564 in his favor, or a credit to himself as fees or commission for collecting this self-same $9,400.
If further evidence were required to show that it was not the understanding of the parties at the time of the compromise that the Daniel Kessee estate, or Mrs. Randolph, was to pay a further sum for the purpose of meeting the expenses of settlement of the Amy Kessee estate, we find the following from the receipt which Prowers, as administrator, gave to Hess, as executor, upon the payment of the $9,400: “And I hereby, in consideration thereof, release, discharge, and forever quit claim unto the said executor, and to the estate of Daniel Kessee, deceased, any and all claim which the estate of Amy Kessee, deceased, has against the estate of Daniel Kessee, deceased, on account thereof, and on account of any and all other claims arising in any manner whatsoever.”
Mr. Hess gave the following testimony:
“Furthermore, John W. Prowers told me in the presence of all the others, that if they would allow him to take out the letters of administration, he would charge nothing for his services. He said so more than once. I did not agree that this $9,400 should be distributed to the heirs, and Mrs. Randolph pay her portion of the administration fees. I never *547 knew they wanted her to pay anything of this until after I had made final settlement of the estate of Daniel Kessee.”
Mr. Prowers was called to the stand twice after this testimony had been given, by Mr. Hess, but he nowhere denied the statement made by Hess that he had offered to administer the estate without charging anything for his services, and the only denial that lie made or attempted as to Hess’s agreement to pay half of the expenses was the answer he made to a question propounded to him, and which we have hereinafter quoted in full.
Counsel for appellee say in their brief:
“The appellant knew that there was no other property out of which these debts could be paid. When she made the agreement and had the court order the payment of the $9,400 to the Prowers heirs, she entered into an agreement of which the sale-of the land for the payment of these debts is really a part. ’ ’
In other words they seek to invoke against appellant the doctrine of estoppel. There is no evidence of such knowledge upon the part of appellant, but if there had been, it was not her duty, after seeing that the $9,400 was paid to the administrator of the Amy Kessee estate, to keep a strict surveillance over Prowers to see that he obeyed the law in the matter of its distribution and application. Having relinquished her interest or claim as distributee in and to that particular fund, appellant had a right to assume that Prowers would faithfully and properly discharge the duties imposed upon him by law. Not until it was sought to divest her of her property, was it incmnbent on her, *548 or even proper for her to interpose objections. Nor does it any where appear in the record that appellant “Had the court order the payment of the $9,400 to the Prowers heirs.”
Furthermore, Mrs. Randolph can be held liable for one-half the expense incident to a settlement of the Amy Kessee estate only upon the theory that she has by agreement consented to be so bound. If she made an enforcible agreement of that character, directly or by her attorney, then such contract constitutes a chose in action which is a personal asset of the estate to which resort must be had rather than to the real property of the estate. Hence it follows that the decree ordering the sale of the real estate was improper, even if the theory advanced by appellee be conceded.
As has already been observed, the claim for $46,000 was never brought on for hearing. Suppose it had been brought to trial, resulting in a judgment in favor of the estate of Amy Kessee and against the estate .of Daniel Kessee for $9,400 and said judgment had been regularly and duly satisfied by the payment thereof; can it be contended, under such circumstancés, that the administrator of the Amy Kessee estate would have had authority to make distribution of the proceeds of such judgment, or that such authority could have been conferred upon him by the probate court, and thereafter to resort to the real estate to pay his commission for collecting said judgment and other expenses of administration? The question answers itself. The payment of the $9,400 as a result of a compromise voluntarily entered into by all the parties concerned, and approved by the probate court,' in no wise *549 changes the character of the fund, or the law applicable thereto, unless, as counsel for appellee seem to contend, some enforcible agreement was made and entered into contemporaneously with the compromise, whereby the estate of Daniel Kessee was charged with one-half of such expense. It would have been a very easy matter, if this had been the understanding of both parties at the time of the compromise, to have inserted a provision in the written instrument pertaining thereto. But, we find no such provision. An attempt seems to have been made by appellee on the hearing in the district court to prove that an oral agreement to that effect was in fact made, but the nearest approach to sustaining his contention in this behalf was the testimony of John W. Prowers. This question was propounded to said Prowers:
££Q. Did Mr. Hess say anything about who was to pay the other half.? (Meaning the half of the expense of administering the Amy Kessee estate.)
“A. Well, he was to pay the other half out of the Daniel Kessee estate, ivas my understanding at the time.”
This, of course, is. quite insufficient to create a liability, even granting that oral testimony was admissible to vary the terms of a written compromise agreement. It was not sufficient that Prowers should have so understood the matter, but, in order to enforce such an agreement, even granting. Hess •had the authority to bind his client by an oral agreement, which involves two propositions not necessary here for us to determine, it was incumbent on appellee to show that this understanding was mutual. There is nothing in the record to show that Mary E. *550 Randolph, was present in the probate court at any .time during the various proceedings there had, and hereinabove referred to. On the contrary, there is evidence tending to show that she was not present, inasmuch as the tentative agreement of compromise was $9,000, originally, and Hess, the executor of the Daniel Kessee estate, of which Mrs. Randolph was the sole beneficiary, raised the amount $400, saying that he would take chances on his client ratifying his action in that behálf.
There can be, to our minds, no more conclusive evidence that Hess, on behalf of Mrs. Randolph, did not contemplate, at the time of the consummation of the compromise, that further demands would be made on his client for expense money, than the evidence regarding the. $400 which he added to the $9000 which had theretofore been discussed, as the amount to be paid. In view of the division of the court in this case, the writer of this opinion feels warranted in setting out the testimony rather fully on this point, quoting entirely from the testimony of witnesses for appellee, and giving the' saíne literally as it appears in the abstract. Prowers, the appellee, gave the following testimony concerning the $400:
“Was present during all conversations. Mr. Hess said he would give $9,400. That he could not give any money for attorneys fees, but would increase it $400. $250 for Lambright, and $150 for Kilgore. (The attorneys for the Amy Kessee es-„ tate.) Nothing was said as to what it was for except in that way. He could not give it, as he thought his client would not allow him to; but he would raise it $400 and it could be used for that purpose.”
*551 We take it there can be no serious controversy that the witness here meant by the phrase, “it could be used for that purpose”, that it could be used for paying fees of the attorneys for the Amy Kessee estate, which, of course, is a legitimate part of the costs or expenses of the administration of an estate.
George A. Kilgore, one of the attorneys for the Amy Kessee estate, testified as follows:
“Was present during all conversations. The conversation prior to coming into court for their allowance was $400 added to the $9000 which the Prowers heirs were to get, was to be paid, $250 to Lambright and $150 to me, as,part compensation.”
This evidence, to our minds, so clearly establishes the understanding of all the parties, viz; that while Mrs. Randolph would not consent to pay any of the costs or expenses, nevertheless, her attorney would, rather than see the proposed compromise fail, assume the responsibility of raising the whole amount from $9,000 to $9,400, and then permit-the Amy Kessee heirs to apply the $400 on the costs and expenses, if they saw fit so to do, that to further discuss this feature of the- case would only result in obscuring a perfectly clear situation.
As we understand the position of our brothers who have found themselves unable to concur with us, it is this, in part, at least:
The $9,400 was no part or portion of the estate of Amy Kessee, and therefore John W. Prowers ought not to have charged, and the probate court ought not to have allowed him the $564, or any other sum, by way of commission on account of the fund flowing from the compromise to the heirs of Amy Kessee; further, it is suggested that the error of *552 the prohate court in this behalf should be by us corrected, by appropriate modification^ of the decree of the trial court. To our minds, we are wholly without authority in this case to enter a decree regulating the commission or fees to be allowed by the probate court to the administrator, Prowers. But, if we are wrong in this position, certainly we may not with propriety adjudge a certain transaction, which came into this record merely as a bit of evidence, introduced for the sole purpose of showing how both the probate judge and the administrator of the Amy Kessee estate regarded the fund in question, as erroneous, and then proceed to correct the error when there is no one before this court making any complaint whatever in that behalf. If it was error for Prowers to charge and the probate judge to allow the $56á- as a commission to Prowers, the administrator, for the collection of the $9,400, it was a wrong perpetrated by Prowers and the probate judge against the brothers and sisters of the said Prowers, and in no way concerns the parties to this case. Moreover, as we have already pointed out, these relatives of John W. Prowers not only have made no complaint of the action of Prowers or the probate court, with reference to this fee or commission, but it may reasonably be supposed that they, with full knowledge of all the facts, have approved the same. Prom this feature of the case, we are impressed that if anyone is in a position to plead estoppel, it 'would be the appellant, rather than the appellee.
Counsel for appellee make the following statement in their brief:
“At the time of the compromise of the claim *553 of the Amy Kessee estate against the Daniel Kessee estate, the appellant, in legal effect, had in her possession $18,000 of money belonging to the appellee. * * * Mary E. Randolph retained her half, which was just as much a part of the estate of Amy Kessee. as the other half was, or could ever become. The other half she paid, through the hands of the administrator, to the children of Amy Kessee.”
To our minds the above contention is wholly unwarranted and is refuted completely, as it seems to us, by the testimony of Mr. Kilgore, a witness called on behalf of appellee, and who appeared in the court below, and appears in this court, as his attorney. Mr. Kilgore gave, on cross examination, the following testimony, which we take from the abstract:
“There was never any agreement to pay $18,000. The agreement was to pay $9,400. You (meaning Mr. Hess, attorney for appellant) never agreed that your estate was owing anything. Always protested your innocencewhile you were willing to plead guilty to the charge of owing us, to the extent of paying it, you was willing to compromise on that basis.”
A careful reading of the excerpt, which we have taken from the. brief of counsel, will make it manifest how difficult it is, even for counsel of appellee, to discuss this controversy without unconsciously admitting that the money that was paid over, the $9,400, was in truth, and in fact the property, not of the heirs of Amy Kessee, but of the estate of Amy Kessee, and as a part of her estate, of course, it was the fund from which expenses and costs must be paid before the same was distributed. Another *554 error into which counsel unwittingly fall, is the assumption that Mary E. Randolph had anything, at the time the compromise was made, in her possession, belonging’ to the estate of Amy Kessee. The estate of Daniel Kessee had not yet been settled, and the claim was against his estate. Moreover, there is not a word in the entire record that will indicate that Mary E. Randolph has ever received a dollar from the estate of Daniel Kessee. The whole of that estate may have been required to meet the liabilities, except the interest which she yet retains in the realty of the Amy Kessee estate.
Counsel for appellee further say: “In the consideration of this case, it may be well to keep in mind the following facts, which are undisputed, or if disputed, were judicially settled in the court below. * * * That the land in question, subject to the payment of the said claim, is owned by the Prowers children, being the children of Amy Kessee by a former husband, the one-half, and the other half by the respondent below, appellant here, who derived such interest by will of Daniel Kessee, who inherited it from his wife, Amy Kessee.” As a legal proposition, we can see no reason why this fact should be kept especially in mind. It was unfortunate for the Prowers children that their mother did not outlive their step father. It may be conceded that the statutes regulating the descent and distribution of property, and the law affecting the distribution of property by will, often work palpable injustice. But to courts, these laws are as inexorable as the natural law that fixed the order of the taking oil of Amy and Daniel. Had Daniel first been gathered to his fathers, we apprehend the Prowers heirs *555 would have been reconciled to the ways of Providence, and fairly well satisfied with the statutes of Colorado applicable to this case.
There is nothing in the record to indicate how Amy Kessee came into possession of the land in question, or’how long she and Daniel were husband and wife. It may well be, so far as anything to the contrary appears in the record, that the land was a gift from Daniel to Amy, or, its value may have been due to the efforts of Daniel. Moreover, he may have, at his own expense, raised and educated the Prowers children from infancy, and otherwise provided handsomely for them. His act in willing his property to his sister may have been justified not only by law, but by good morals. However, these are matters entirely outside the case, and with which this court has nothing whatever to do.
For the above and foregoing reasons, the judgment of the district court should be reversed, and the case remanded with directions to said court to enter an order denying the petition of appellee, and taxing the costs to him, which is accordingly done.

Reversed-and Remanded.

Scott, P. J. and King, J. dissent.